E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
J. JAMARI BUXTON (Cal. Bar No. 342364)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:  (213) 894-3519/3289
Facsimile:  (213) 894-7631
Email:       Jamari.Buxton@usdoj.gov
                Susan.Har@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS | Case No. 2:24-cv-01650-SB<br><br>GOVERNMENT'S RESPONSE TO APPLICANTS' MOTION TO UNSEAL SEARCH WARRANT MATERIALS<br><br>Hearing Date: April 12, 2024<br>Hearing Time: 8:30 a.m.<br>Location:  Courtroom of the Hon. Stanley Blumenfeld Jr. |

Respondent United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys J. Jamari Buxton and Susan S. Har, hereby files its response to Applicants Consumer Watchdog's and Los Angeles Times Communications LLC's (together, "Applicants") motion to unseal search warrant materials.  (Dkt. No. 6, the "Motion.")

This response is based upon the attached memorandum of points and authorities, the accompanying declaration of J. Jamari Buxton, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 15, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/
J. JAMARI BUXTON
SUSAN S. HAR
Assistant United States Attorney

Attorneys for Respondent
UNITED STATES OF AMERICA

# <u>TABLE OF CONTENTS</u>

<u>DESCRIPTION</u>                                                                                                         <u>PAGE</u>

TABLE OF AUTHORITIES ................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND .........................................................................2

        A.      The Federal Investigation ...............................................................2

        B.      The FRE 502(D) Orders ..................................................................3

        C.      The Sealed Search Warrant Materials ...........................................4

        D.      Paradis Asks the Government to Supply Him with the Search
                Warrant Materials Ahead of His Sentencing and the Government
                Also Makes Them Available to the State Bar ..................................5

        E.      The Government Intervenes in the Bradshaw Matter to Oppose
                Production of the Search Warrant Materials ..................................6

        F.      The Applicants and the Government Meet and Confer Regarding the
                Search Warrant Materials ...............................................................7

III.    ARGUMENT ...............................................................................................8

        A.      Legal Standard ................................................................................8

        B.      Uncharged Subjects of the Federal Investigation Have Compelling
                Privacy, Reputational, and Due Process Interests that Warrant
                Redacting Their Names/Identities ...................................................8

        C.      There Are Compelling Reasons to Protect the Identities of Individuals
                Who Cooperated in the Federal Investigation ...............................12

        D.      Grand Jury Materials Are Traditionally Kept Secret and Warrant the
                Highest Protection Here .................................................................13

        E.      The Court Should Authorize Redactions of Sensitive Medical
                Information ....................................................................................15

        F.      Victim Information Should be Redacted..........................................16

        G.      Individuals' Personal Identifying Information Should be Redacted...........17

        H.      Impeachment-Related Disclosures in the Search Warrant Materials
                Unrelated to the Merits of the Potential Charges Should Be Redacted ......18

# <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                                                                          <u>PAGE</u>

I.     The Redactions Proposed by the Government Comport with the FRE
502(d) Orders ......................................................................................... 18

IV.   CONCLUSION....................................................................................... 19

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE

Activision Publ'g, Inc. v. EngineOwning UG,
    No. CV222CV00051MWFJCX, 2023 WL 2347134 (C.D. Cal. Feb. 27, 2023) .......... 17

Andruhovics v. San Francisco Sheriff's Off.,
    No. 22-CV-01178-HSG, 2023 WL 2504756 (N.D. Cal. Mar. 13, 2023) .................... 16

Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.,
    No. CV 20-672-RSWL-EX, 2021 WL 7708484 (C.D. Cal. Apr. 14, 2021)................ 17

Douglas Oil Co. of Cal. v. Petrol Stops Nw.,
    441 U.S. 211 (1979) ......................................................................................... 13, 14

Gary v. Unum Life Ins. Co. of Am.,
    No. 3:17-CV-01414-HZ, 2018 WL 1811470 (D. Or. Apr. 17, 2018).......................... 16

Hatfield v. Naughton,
    No. 3:19-CV-0531-MMD-CLB, 2022 WL 21756598 (D. Nev. Jan. 28, 2022) .......... 16

Heineke v. Santa Clara Univ.,
    No. 17-CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ................ 16, 17

Hendricks v. Aetna Life Ins. Co.,
    No. CV1906840CJCMRWX, 2019 WL 9054346 (C.D. Cal. Nov. 7, 2019).......... 15, 16

In re Am. Hist. Ass'n,
    62 F. Supp. 2d 1100 (S.D.N.Y. 1999)........................................................................ 14

In re Granick,
    388 F. Supp. 3d 1107 (N.D. Cal. 2019)........................................................................ 9

In re Los Angeles Times Commc'ns LLC,
    28 F.4th 292 (D.C. Cir. 2022) .................................................................................... 11

In re Los Angeles Times Commc'ns LLC,
    628 F. Supp. 3d 55 (D.D.C. 2022)........................................................................ 12, 13

In re McClatchy Newspapers, Inc.,
    288 F.3d 369 (9th Cir. 2002).................................................................................... 11

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>CASES</u>                                                                            <u>PAGE</u>

<u>In re New York Times Co.</u>,
   No. MC 21-91 (JEB), 2021 WL 5769444 (D.D.C. Dec. 6, 2021) ...................... 9, 13, 14

<u>In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31</u>,
   No. MC 23-84 (JEB), 2023 WL 8254630 (D.D.C. Nov. 29, 2023) ................... 9, 11, 14

<u>Kamakana v. City & Cnty. of Honolulu</u>,
   447 F.3d 1172 (9th Cir. 2006) ............................................................................ 8, 14, 15

<u>Mahone v. Amazon.com, Inc.</u>,
   No. C22-594 MJP, 2024 WL 965139 (W.D. Wash. Mar. 6, 2024) .............................. 17

<u>Matter of the Application of WP Co. LLC</u>,
   201 F. Supp. 3d 109 (D.D.C. 2016) ....................................................................... passim

<u>Reflex Media, Inc. v. Doe No. 1</u>,
   No. 218CV02423RFBBNW, 2022 WL 2985938 (D. Nev. July 28, 2022) .................. 17

<u>Richards v. Cox</u>,
   No. 216CV01794JCMBWN, 2019 WL 2518110 (D. Nev. June 18, 2019) ................ 16

<u>Roviaro v. United States</u>,
   353 U.S. 53, (1957) ..................................................................................................... 12

<u>Times Mirror Co. v. United States</u>,
   873 F.2d 1210 (9th Cir. 1989) .................................................................................. 9, 17

<u>United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90,</u>
   <u>Exit 514, S. of Billings, Mont.</u>, 658 F.3d 1188 (9th Cir. 2011) .......................... 8, 10, 12

<u>United States v. Hubbard</u>,
   650 F.2d 293 (D.C. Cir. 1980) ................................................................................... 16

<u>United States v. Procter & Gamble Co.</u>,
   356 U.S. 677 (1958) .................................................................................................... 13

<u>United States v. Sells Eng'g, Inc.</u>,
   463 U.S. 418 (1983) .................................................................................................... 14

## TABLE OF AUTHORITIES (CONTINUED)

STATUTES                                                                    PAGE

18 U.S.C. § 3771(a)(8)...................................................................16, 17

RULES

Fed. R. Civ. P. 5.2(a)...................................................................17, 18
Fed. R. Crim. P. 6(e)...................................................................passim
Fed. R. Crim. P. 6(e)(2)...................................................................13
Fed. R. Crim. P. 6(e)(3)(E)(i)...................................................................6
Fed. R. Crim. P. 6(e)(6)...................................................................13
Fed. R. Crim. P. 49.1(a)...................................................................17, 18
Fed. R. Evid. 502(d)...................................................................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

While legitimate, the public's qualified common law right of access to sealed search warrant materials after an investigation has been terminated is not absolute.  Here, a host of compelling reasons support shielding from the public – through specifically tailored government redactions – certain information in the approximately 1,400 pages of search warrant materials Applicants seek to unseal, which relate to the government's extensive corruption investigation involving the Los Angeles City Attorney's Office and the Los Angeles Department of Water and Power ("LADWP").  First, absent the redactions urged by the government, uncharged subjects of the now-completed federal investigation will face concrete privacy, reputational, and due process concerns, as will third party witnesses who cooperated in the investigation confidentially, likely impairing future criminal investigations by the government.  Second, grand jury information in the search warrant materials subject to Federal Rule of Criminal Procedure 6(e) – which codifies the longstanding tradition of grand jury secrecy – likewise must be redacted, lest the government be able to secure full and frank testimony from witnesses going forward.  Third, there are compelling reasons to redact sensitive medical information, victim identities, and personal identifying information, all of which could imperil individuals' privacy interests if broadcast to the public and, at the same time, have little relevant value to the public.  Finally, the same is true of disclosures of potential impeachment-related information in the search warrant materials, which has nothing to do with the stated purpose of Applicants' Motion.

Given the compelling reasons articulated in detail below, the government requests that the Court authorize the proposed redactions, which strike a reasonable balance between the presumptive right of public access and protection of important government and third party interests.

## II.    FACTUAL BACKGROUND

### A.    The Federal Investigation

In 2019, the FBI and the United States Attorney's Office launched an investigation into alleged misconduct involving the Los Angeles City Attorney's Office, its then Special Counsel, and others stemming from litigation over a faulty billing system implemented years earlier by LADWP.  (Buxton Decl. ¶ 3.)  The investigation initially focused on City officials and private attorneys who, the inquiry revealed, engaged in a collusive "white knight" litigation scheme designed to extinguish a slew of politically-damaging class action lawsuits related to the billing system.  (Id.)  Under the scheme, the City – through complicit attorneys on both sides – effectively brought a class action lawsuit against itself and settled the case on City-friendly terms, swallowing up the other, non-collusive lawsuits in the process.  (Id.)  Although such collusive and unethical conduct is <u>not</u> – without more – a federal crime, the investigation developed into a broader inquiry that revealed corrupt and, in multiple instances, chargeable criminal conduct within both the City Attorney's Office and LADWP.  (Id. ¶ 4.)  This included a $1.75 million kickback paid by the attorney who brought the sham lawsuit against the City to one of its then Special Counsel; an extortion plot designed to conceal the collusive nature of the lawsuit; and an agreed-upon bribe that caused LADWP's then General Manager to advocate for and help secure a massive $30 million no-bid contract for a company founded by the briber (the same Special Counsel).  (Id.)

The federal investigation concluded in 2023 and resulted in felony convictions of four high-ranking City officials: (1) David Wright, the former General Manager of LADWP, who pled guilty to bribery and was sentenced to six years' imprisonment; (2) David Alexander, the former Chief Information Security Officer of LADWP, who pled guilty to lying to the FBI about a bribery scheme and was sentenced to four years' imprisonment; (3) Thomas Peters, the former head of civil litigation at the City Attorney's Office, who cooperated in the federal investigation, pled guilty to aiding and abetting extortion, and was sentenced to three years' probation; and (4) and Paul Paradis,

2

the City's former Special Counsel, who also cooperated in the federal investigation, pled guilty to bribery, and was sentenced to 33 months' imprisonment.  (Id. ¶ 5.)  Beyond producing these important convictions, the federal investigation uncovered various instances of unethical conduct by City and private attorneys and spawned a companion attorney misconduct investigation currently being conducted by the State Bar of California.  (Id. ¶ 6.)

**B.    The FRE 502(D) Orders**

Because aspects of the federal investigation focused on conduct by a number of City attorneys, implicating potential privilege issues, the government and the City entered into an agreement whereby the City preserved its ability to assert attorney-client privilege and attorney work-product protection in other forums over documents it gave the government as part of the federal investigation.  (Id. ¶ 7.)  A federal court thereafter issued separate orders memorializing the agreement pursuant to Federal Rule of Evidence 502(d) ("the FRE 502(d) Orders"). [1]  See CR Misc. No. 19-292-PA.  Relevant here, the FRE 502(d) Orders state that any disclosure to the government of documents, materials, and information subject to attorney-client privilege and attorney work-product protection "shall not be deemed a waiver by the City of its ability to assert [those privileges] in any other federal or state proceeding, with the exception of any criminal proceeding arising from the instant Federal Criminal Investigation."  Id. ¶ 2(a).  The FRE 502(d) Orders generally authorized the government to use potentially privileged materials and information provided by the City "in connection with the Federal Criminal Investigation and potential prosecution of any criminal violations," including as part of its discovery obligations, provided the government seeks to limit further disclosure through a protective order.  See id. ¶ 3.  The FRE 502(d) Orders further authorized the government to use such materials and information before the grand jury and to

---

[1] Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a waiver in any other federal or state proceeding."  Fed. R. Evid. 502(d).

1  "reference[] them in search warrant affidavit[s] and other sealed criminal process."  Id.

2  ¶ 4.

3  **C.     The Sealed Search Warrant Materials**

4  As part of the federal investigation, the government obtained approximately 33

5  search warrants between 2019 and 2021 authorizing investigators to search offices,

6  homes, email accounts, electronic devices, and various other locations and items in

7  search of evidence of crimes.  (Buxton Decl. ¶ 8.)  The government obtained orders

8  sealing the search warrant materials, among other reasons, to protect the integrity of the

9  investigation and guard against witness tampering and the destruction of evidence.  (Id.)

10  The search warrant materials, which total approximately 1,400 pages, currently remain

11  sealed pursuant to those orders.  (Id.)

12  The search warrant materials chronicle many aspects of the government's

13  extensive, years-long investigation, along with other matters the government felt may be

14  relevant to the court's determination of probable cause.  (Id. ¶ 9.)  Among other things,

15  they identify and/or describe: many of the events/matters the government probed,

16  including the collusive litigation scheme and subsequent cover up, contracts to remediate

17  LADWP's billing system, and efforts to secure various other City contracts; City

18  officials, private attorneys, and others whose conduct the government investigated, many

19  of whom the government did not ultimately charge; victims or intended victims of

20  alleged crimes; confidential government informants and other witnesses who cooperated

21  in the federal investigation; some of the methods and means the government used to

22  conduct the investigation, including certain tools, techniques, and/or strategies used by

23  investigators; and the general timeline by which the federal investigation occurred.  (Id.)

24  The search warrant materials do not discuss all the evidence the government compiled as

25  part of the federal investigation, nor do they include all mitigating information related to

26  a particular subject or potential crime.[2]  (Id. ¶ 10.)

27  _____

28  [2] The search warrant materials also do not discuss or analyze the government's charging decisions regarding various subjects of the federal investigation.  (Id.)

Portions of the search warrant materials contain information subject to grand jury secrecy under Federal Rule of Criminal Procedure 6(e).  (Id. ¶ 11.)  These include excerpts of grand jury testimony, descriptions of grand jury testimony, and statements commenting on grand jury testimony.  (Id.)  The search warrant materials also contain personal identifying information for various individuals, such as dates of birth, social security numbers, home and personal email addresses, and personal telephone numbers, as well as sensitive medical and health-related information about one or more subjects of the federal investigation.  (Id.)  The search warrant materials further include several disclosures of information unrelated to the merits of the potential charges that disclose statements made by then assigned federal agents that could constitute impeachment evidence.  (Id. ¶ 12.)  Information arguably falling within the FRE 502(d) Orders is interwoven throughout the search warrant materials.  (Id. ¶ 13.)

### D.    Paradis Asks the Government to Supply Him with the Search Warrant Materials Ahead of His Sentencing and the Government Also Makes Them Available to the State Bar

Ahead of sentencing in Paradis' criminal case, the government, at Paradis' request, provided Paradis with nearly 1,500 pages of sentencing discovery, including the search warrant materials, so he could prepare for sentencing.  (Id. ¶ 14.)  Because the sentencing discovery was confidential, the government made its production to Paradis subject to certain "Use Parameters," which he and his counsel agreed to in writing.  (Id.)  Among other requirements, the Use Parameters required Paradis to use the sentencing discovery solely in connection with criminal sentencing and prohibited him from sharing the sentencing discovery with others.  (Id.)  The Use Parameters further required Paradis to "exercise reasonable care in ensuring the confidentiality of the Sentencing Discovery" and to file any materials that describe, reference, or disclose information contained in the sentencing discovery provisionally under seal.  (Id.)  The government thereafter obtained a protective order memorializing the agreed-upon Use Parameters and adding several other provisions, including a provision permitting other courts to require disclosure of

the sentencing discovery following a proceeding.  See <u>United States v. Paul Paradis</u>, 21-CR-540-SB, Dkt. No. 103.

The government separately obtained an order pursuant to Federal Rule of Criminal Procedure Rule 6(e)(3)(E)(i) authorizing it to provide specified grand jury materials to the State Bar, as well as a protective order governing the limited criminal discovery it disclosed to the State Bar.  See <u>id.</u>, Dkt. Nos. 81, 82, 85, 86, 88.  The government did so, at the State Bar's request, to assist with the State Bar's ongoing investigation of various attorneys.  See <u>id.</u>

### E.   The Government Intervenes in the Bradshaw Matter to Oppose Production of the Search Warrant Materials

In late-July 2023, plaintiffs in <u>Dennis Bradshaw v. City of Los Angeles et al.</u>, 19-cv-06661-GW-MAR, a class action lawsuit related to the collusive litigation scheme, issued a subpoena to Paradis demanding that he produce the search warrant materials to them.  (<u>Id.</u> ¶ 15.)  The plaintiffs later filed a motion to compel the search warrant materials.  <u>Bradshaw</u>, Dkt. No. 264.  The government, in turn, intervened in the <u>Bradshaw</u> matter to oppose the motion and prevent disclosure of the materials.  See <u>id.</u>, Dkt. No. 290.

The court overseeing <u>Bradshaw</u> subsequently took the motion to compel off-calendar based on the parties' representations that they intend to meet and confer regarding a potential resolution of the dispute.  See <u>id.</u>, Dkt. Nos. 505, 510.  Soon after, the City sent the government a letter stating that it understood the government "is considering no longer opposing the Bradshaw Plaintiff's subpoena to obtain the sentencing documents," some of which it said are "covered by the FRE 502(d) Orders." (Buxton Decl. ¶ 16.)  The City said it "trust[s] that this understanding is incorrect," and that it needs to confer with the City Counsel, who holds the privilege, "in order to determine whether the City is prepared to consider a waiver."  (<u>Id.</u>)

1

2

### F.      The Applicants and the Government Meet and Confer Regarding the Search Warrant Materials

3

4

5

6

7

In January 2024, Applicants informed the government by letter that they intended to apply to unseal the search warrant materials.  (Id. ¶ 17.)  The parties thereafter met and conferred in person multiple times.  (Id.)  The government told Applicants that it was open in principle to unsealing the search warrant materials provided the following categories of information are redacted:

8

9

- The names/identities of uncharged third parties who were then subjects of the federal investigation

10

11

12

- The names/identities of confidential government informants and witnesses who cooperated in the federal investigation (not including Paradis and Peters, who pled guilty to publicly filed cooperation plea agreements)

13

14

15

- Information protected by grand jury secrecy, including grand jury testimony, summaries of grand jury testimony, and statements incorporating grand jury testimony

16

17

- Confidential medical information, including medical records and treatment information

18

- The names/identities of victims and intended victims of alleged crimes

19

20

21

- Personal identifying information, including, but not limited to, social security numbers, dates of birth, bank account information, home and personal email addresses, and personal telephone numbers

22

23

- Impeachment-related information regarding affiants/potential government witnesses unrelated to the merits of the federal investigation; and

24

25

- Descriptions of any confidential/non-public investigative tools and techniques.[3]

26

27

28

_____

[3] After further consideration, the government is withdrawing this basis for redaction.

1  (Id.)  Despite productive negotiations, the parties were unable to reach a final agreement

2  regarding the search warrant materials.  (Id. ¶ 18.)  Applicants' Motion followed.

3  **III.   ARGUMENT**

4        **A.   Legal Standard**

5        The Ninth Circuit has held that the public has a qualified common law right of

6  access to sealed search warrant materials after an investigation has been terminated.

7  United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90,

8  Exit 514, S. of Billings, Mont. ("Custer Battlefield Museum"), 658 F.3d 1188, 1194 (9th

9  Cir. 2011).  But that right is not absolute, and a party can overcome the strong

10  presumption of access by articulating "compelling reasons" supporting continued sealing

11  of the materials and/or redaction of certain information.  See id. at 1195 (citing

12  Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006)).  When

13  a district court elects to keep sealed or redact materials or information after

14  "conscientiously balanc[ing] the competing interests of the public and the party who

15  seeks to keep certain judicial records secret," its determination will be reviewed solely

16  for abuse of discretion provided the court "bas[es] its decision on compelling reasons

17  and specific factual findings."  Custer Battlefield Museum, 658 F.3d at 1195 (cleaned

18  up).

19        As detailed below, compelling reasons support the limited and tailored redactions

20  proposed by the government here.

21        **B.   Uncharged Subjects of the Federal Investigation Have Compelling**

22                 **Privacy, Reputational, and Due Process Interests that Warrant Redacting Their Names/Identities**

23        When an investigation does not lead to criminal charges against a person, the

24  uncharged individual retains significant personal interests that are implicated when a

25  party seeks to unseal records regarding the inquiry.  See Matter of the Application of WP

26  Co. LLC ("WP Co."), 201 F. Supp. 3d 109, 122 (D.D.C. 2016).  Not only does the "mere

27  association with alleged criminal activity as the subject or target of a criminal

28  investigation carr[y] a stigma that implicates an individual's reputational interest," as

well as "an individual's privacy interests," a related "due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations."[4]  Id.; see Times Mirror Co. v. United States, 873 F.2d 1210, 1216 (9th Cir. 1989) (identifying various "risks" that are present "when search warrant materials are made public," albeit in the context of an ongoing investigation, including that "persons named in the warrant papers will have no forum in which to exonerate themselves," causing "possible injury to privacy interests."); In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31 ("In re Press Application"), No. MC 23-84 (JEB), 2023 WL 8254630, at *6 (D.D.C. Nov. 29, 2023) ("Although a search warrant is not a formal allegation of a crime, the affidavit's narrative, if unsealed, would essentially levy such allegations against unindicted individuals," implicating privacy interests that are "particularly weighty" for uncharged subjects who have no forum to vindicate themselves.) (cleaned up).

Given the significant concerns at stake, courts have repeatedly held that uncharged parties' (and other third parties') privacy, reputational, and due process interests are sufficiently compelling to outweigh the public's right of access to sealed materials.  See, e.g., In re Granick, 388 F. Supp. 3d 1107, 1119 (N.D. Cal. 2019) (denying petition to unseal search warrant materials filed between 2006 and 2018 given, among other factors, the government's compelling interest in protecting "the privacy, reputational and due process interests of individuals who were the subject of closed investigations that did not result in criminal charges."); In re New York Times Co., No. MC 21-91 (JEB), 2021 WL 5769444, at *5 (D.D.C. Dec. 6, 2021) (denying newspaper's application to unseal

---

[4] As explained to the Applicants, DOJ policy generally forbids prosecutors from identifying uncharged third parties in public documents and hearings to protect these same privacy and reputational interests.  See United States Department of Justice Manual § 9-27.760 (Limitation on Identifying Uncharged Parties Publicly) ("In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third parties . . .  As a series of cases makes clear, there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party . . .  In most cases, any legitimate governmental interest in referring to uncharged third-party wrongdoers can be advanced through means other than those condemned in this line of cases.")

government's redactions of "detailed information about subjects of the [criminal] investigation — including information that could identify them, the extent of their cooperation with law enforcement, and their private activities," based, in part, on privacy interests of the uncharged subjects); WP Co., 201 F. Supp. 3d at 129 ("compelling privacy and due process interests of persons who have not been charged outweigh any limited public interest in further disclosure in this case."). Indeed, it was no accident that the Ninth Circuit – in the same opinion it ruled the common law right of access applies to search warrant materials post-investigation – went on to state that "the privacy interests of the individuals identified in the warrants and supporting affidavits" are "important" and endorsed protecting those interests "through a court's discretion either to release redacted versions of the documents or, if necessary, to deny access altogether." See Custer Battlefield Museum, 658 F.3d at 1194.

The Court should conduct the same analysis here. As is commonplace in public corruption investigations, the government did not bring criminal charges against a number of the people implicated in the matters it investigated, including both public officials and private citizens. While the government's decision to not prosecute certain individuals does not necessarily exonerate those people or suggest no wrongdoing by them occurred (although a lack of charges can sometimes denote those conclusions), the reality is that if the names and/or identities of these uncharged subjects are not redacted in the search warrant materials, the public will draw the (mistaken but understandable) conclusion that they are guilty of crimes simply by being subjects of the federal investigation. This subjects the uncharged persons to "the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing" when they "lack the opportunity to clear their names at trial," WP Co., 201 F. Supp. at 124 (cleaned up), offending the uncharged subjects' privacy, reputational, and due process interests.

The concerns articulated above are not simply "hypothesis or conjecture" by the government. See Custer Battlefield Museum, 658 F.3d at 1195. Indeed, a former

10

member of the LADWP Board of Commissioners <u>moved to intervene in Paradis'</u> <u>criminal case</u> to strike, expunge, or redact statements about an <u>anonymized</u> former LADWP Board Member in a government filing that the intervenor claimed were defamatory and prejudicial.  See <u>Paradis</u>, Dkt. No. 72.  Broadly speaking, the intervenor, whom the government did not charge with any crimes, claimed that the filing improperly suggested they were guilty of a crime and said that this suggestion harmed their privacy, reputational, and due process rights.  (Buxton Decl. ¶ 19.)  The parties met and conferred, and the government filed a new version of the document that contained redactions addressing the intervenor's concerns.  See <u>Paradis</u>, Dkt. Nos. 72, 73, 74.  The import of the intervenor's motions is plain: the privacy, reputational, and due process concerns articulated by the government are <u>real</u>.

And while some courts have held that privacy interests are more attenuated where a person publicly acknowledges they were the subject of an investigation, or where the investigation involved actions taken by a public official in their public capacity – <u>see</u>, <u>e.g.</u>, <u>In re Los Angeles Times Commc'ns LLC</u>, 28 F.4th 292, 298 (D.C. Cir. 2022), <u>In re McClatchy Newspapers, Inc.</u>, 288 F.3d 369, 373 (9th Cir. 2002) – "attenuation of privacy rights . . . does not equate with <u>extinguishment</u> of those rights."  <u>See In re Press Application</u>, 2023 WL 8254630, at *6 (cleaned up and emphasis added).  So too here.  Rather, given the media's continued focus on the federal investigation and ongoing speculation about who was involved in what conduct, the privacy, reputational, and due process concerns articulated above remain particularly acute and compelling.  <u>See id</u>. ("[T]he media spotlight trained on the instant investigation heightens the reputational concerns here.")

1
2

### C.     There Are Compelling Reasons to Protect the Identities of Individuals Who Cooperated in the Federal Investigation[5]

3
4
5

The government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." WP Co., 201 F. Supp. 3d at 127 (cleaned up).  Preservation of witness anonymity

6
7
8

"recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro v. United States, 353 U.S. 53, 59,

9
10
11
12

(1957).  Among other things, witness anonymity "serves to ensure potential witnesses are free to provide information without fear of reprisal" and that "investigators are able obtain information and assistance from individuals with direct knowledge of criminal conduct." WP Co., 201 F. Supp. 3d at 127.  This is "critical to law enforcement efforts

13
14
15
16

and the government's compelling interest in protecting the public." Id.  Witness anonymity also shields cooperating witnesses from many of the privacy, reputational, and due process concerns faced by uncharged subjects of investigations whose identities become public.  See id. at 122.

17
18
19
20
21
22
23
24
25

For these important reasons, courts routinely endorse sealing and/or redacting the identities of witnesses who cooperate with investigators.  See Custer Battlefield Museum, 658 F.3d at 1195 n.5. ("[T]he need to protect the identities and safety of confidential informants" is among the "recognized . . . concerns that may call for redaction of [warrant] materials or withholding of disclosure outright."); In re Los Angeles Times Commc'ns LLC, 628 F. Supp. 3d 55, 70 (D.D.C. 2022) (finding that proposed redactions of search warrant materials were "appropriate to protect third-party privacy interests—including . . . information gained from the cooperation of private third-party witnesses.")

26
27
28

_____

[5] As discussed above, the government does not seek to redact references to Paradis and Peters.

Here, redacting the names and/or identities of individuals who cooperated in the federal investigation will serve compelling law enforcement interests by incentivizing people with direct knowledge of crimes to report that information to the government.  If the names and/or identities of individuals who did so in the federal investigation were made public, particularly in a high-profile case like this, "future investigators would risk losing the ability to obtain truthful information from subjects or witnesses since those individuals might not trust that their statements would in fact be kept private."  See In re New York Times Co., 2021 WL 5769444, at *6 (cleaned up).  Because the search warrant materials rely heavily on information provided by third party witnesses whose role in the investigation is not publicly known (like many significant corruption investigations), disclosure of their names and/or identities would "compromise not only those third-party witnesses' reputations . . . but also the government's own law enforcement interest in maintaining its ability to secure cooperation from witnesses in the future."  In re Los Angeles Times Commc'ns LLC, 628 F. Supp. 3d at 67 (cleaned up).

**D.    Grand Jury Materials Are Traditionally Kept Secret and Warrant the Highest Protection Here**

The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979); United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958) (noting the "long–established policy that maintains the secrecy of the grand jury proceedings in the federal courts.").  Federal Rule of Criminal Procedure 6(e) codifies the traditional rule of grand jury secrecy and strictly prohibits public disclosure of any "matter[s] occurring before [a] grand jury," Fed. R. Crim. P. 6(e)(2), with similar protections afforded to "[r]ecords, orders, and subpoenas relating to grand-jury proceedings." Fed. R. Crim. P. 6(e)(6).  Rule 6(e) thus broadly "protect[s] the identities of witnesses or jurors, the substance of testimony, the

strategy or direction of the investigation, the deliberations or questions of jurors, and the like." In re Press Application, 2023 WL 8254630, at *3 (cleaned up).

Even after an investigation has concluded, grand jury proceedings generally remain secret to ensure, among other things, that "persons who are accused but exonerated by the grand jury will not be held up to public ridicule." See Douglas Oil Co., 441 U.S. at 219; see WP Co., 201 F. Supp. 3d at 122 ("Given the potential for evidence presented to a grand jury to cause serious harm to a person's privacy and due process interests, the Federal Rules of Criminal Procedure ensure that such proceedings remain closed."); In re Am. Hist. Ass'n, 62 F. Supp. 2d 1100, 1103 (S.D.N.Y. 1999) ("A cornerstone of the grand jury secrecy rule is the protection of the reputations and well-being of individuals who are subjects of grand jury proceedings, but who are never indicted . . . [T]he rule of secrecy seeks to protect such unindicted individuals from the anxiety, embarrassment and public castigation that may result from disclosure."). Additionally, without secrecy, "many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony," and "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements." See United States v. Sells Eng'g, Inc., 463 U.S. 418, 424 (1983) (quoting Douglas Oil Co., 441 U.S. at 219). These concerns are, again, particularly acute in a corruption investigation focused on high-level public officials who may have more ability for "retribution" or "inducements."

Consistent with these principles, the Ninth Circuit has held that grand jury transcripts are among a "narrow range of documents [that] is not subject to the right of public access at all because the records have traditionally been kept secret for important policy reasons." Kamakana, 447 F.3d at 1178 (cleaned up and emphasis added); see id. at 1185 (explaining that grand jury materials "warrant the highest protection.") (emphasis added). Along these lines, courts have repeatedly denied access to grand jury materials, either through sealing or redactions. See In re New York Times Co., 2021

WL 5769444, at *6 ("Given the strong default of secrecy for grand-jury information, the Court finds that it is appropriate to keep in place redactions relating to such material.").

Applicants urge the Court to abandon the long-established tradition of grand jury secrecy here based on statements Paradis made at his sentencing characterizing certain statements and opinions of an agent in the search warrant materials about a subject's grand jury testimony, as well as similar comments Paradis made to reporters.  (See Motion at 3, 18.)  In particular, Applicants argue that "[t]he cat is out of the bag" because the information Paradis revealed "was widely disseminated both within the legal community, and to the public at large," eliminating the need for Rule 6(e) protection.  (See id. at 18.)  But this ignores three critical facts undermining Applicants' argument, namely, that (1) Paradis – and not the government – disclosed the information, and without the government's consent, (2) he arguably did so in contravention of a protective order, which required him to "exercise reasonable care in ensuring the confidentiality" of the search warrant materials, see Paradis, Dkt. No. 103 ¶ 4(d), and (3) despite this, he did not actually reveal or discuss the content of the grand jury testimony in question.  In short, the cat remains in the bag, and under these circumstances, removing Rule 6(e) secrecy based on what Paradis did would merely reward his conduct and harm others and the government, for the reasons discussed above.  Accordingly, the information in the search warrant materials falling under Rule 6(e) should continue to receive the "highest protection."  See Kamakana, 447 F.3d at 1185.

### E.   The Court Should Authorize Redactions of Sensitive Medical Information

Courts in this circuit have recognized that the need to protect medical privacy constitutes a compelling reason to seal medical records, which contain sensitive and private information about a person's health.  See, e.g., Hendricks v. Aetna Life Ins. Co., No. CV1906840CJCMRWX, 2019 WL 9054346, at *4 (C.D. Cal. Nov. 7, 2019) ("There are compelling reasons to file [plaintiffs' health] information under seal.  The public has a minimal interest in Plaintiffs' medical records, which are typically private and

confidential," and "disclosure could lead to a serious invasion of Plaintiffs' privacy.") (cleaned up); Andruhovics v. San Francisco Sheriff's Off., No. 22-CV-01178-HSG, 2023 WL 2504756, at *2 (N.D. Cal. Mar. 13, 2023) ("health records properly meet the compelling reasons standard."); Hatfield v. Naughton, No. 3:19-CV-0531-MMD-CLB, 2022 WL 21756598, at *1 (D. Nev. Jan. 28, 2022) (a party's "interest in keeping his sensitive health information confidential outweighs the public's need for direct access to the medical records."); Gary v. Unum Life Ins. Co. of Am., No. 3:17-CV-01414-HZ, 2018 WL 1811470, at *3 (D. Or. Apr. 17, 2018) ("Plaintiff's interest in keeping her personal and medical information private outweighs the right of public access and is a compelling reason to seal the record.").

The search warrant materials here contain sensitive medical and health-related information about one or more subjects of the federal investigation which, if disclosed, would constitute a serious invasion of their privacy. Because the public has "minimal interest" in this private and highly confidential information, see Hendricks, 2019 WL 9054346, at *4, it should be redacted.

### F.   Victim Information Should be Redacted

Courts have long-recognized that victims' identities may be shielded from public access under certain circumstances. See United States v. Hubbard, 650 F.2d 293, 315 (D.C. Cir. 1980) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect . . . the privacy and reputation of victims of crimes.") This often occurs in connection with minor victims, see Richards v. Cox, No. 216CV01794JCMBWN, 2019 WL 2518110, at *2 (D. Nev. June 18, 2019), or victims of sexual assault, see Heineke v. Santa Clara Univ., No. 17-CV-05285-LHK, 2017 WL 6026248, at *22 (N.D. Cal. Dec. 5, 2017), but the fact remains that all victims of crimes are afforded privacy rights. See 18 U.S.C.

§ 3771(a)(8) (the Crime Victims' Rights Act) (stating that crime victims have "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy.")

Besides former Special Counsel Paul Kiesel, whom Peters helped extort to cover-up the collusive litigation scheme, the search warrant materials identify one or more other victims or intended victims of crimes. To protect their "dignity and privacy" as crime victims, see id., the Court should authorize redactions of their identity in the search warrant materials.

### G.   Individuals' Personal Identifying Information Should be Redacted

The dissemination of personally identifying information, such as individuals' dates of birth, social security numbers, bank account information, home and personal email addresses, and personal telephone numbers, poses considerable harm to those people and their privacy interests, prompting courts to routinely keep this information from the public. See, e.g., Mahone v. Amazon.com, Inc., No. C22-594 MJP, 2024 WL 965139, at *2 (W.D. Wash. Mar. 6, 2024) (authorizing redaction of personal identifying information because "[d]isclosure of this information could cause a significant harm to third parties," and "the public can otherwise understand and appreciate the merits of Defendants' position without this information."); Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co., No. CV 20-672-RSWL-EX, 2021 WL 7708484, at *3 (C.D. Cal. Apr. 14, 2021) ("The public has a minimal interest in personal identifying information."); Activision Publ'g, Inc. v. EngineOwning UG, No. CV222CV00051MWFJCX, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023) (finding compelling reasons to seal parties' customers' personal information, including the customers' names, account numbers, IP addresses, and email addresses); Reflex Media, Inc. v. Doe No. 1, No. 218CV02423RFBBNW, 2022 WL 2985938, at *2 (D. Nev. July 28, 2022) (keeping personal identifying information in an exhibit under seal "because public disclosure of this information could be used for improper purposes.").

This proposition should not be controversial given the requirements in Federal Rule of Criminal Procedure 49.1 and Federal Rule of Civil Procedure 5.2, which are

17

designed to safeguard this highly sensitive information.  See Fed. R. Crim. P. 49.1(a) (requiring that an individual's social security number, taxpayer identification number, date of birth, the name of an individual known to be a minor, and financial account number be redacted in any document filed electronically or in paper form); Fed. R. Civ. P. 5.2(a) (same).  Accordingly, all personal identifying information in the search warrant materials should be redacted.

### H.    Impeachment-Related Disclosures in the Search Warrant Materials Unrelated to the Merits of the Potential Charges Should Be Redacted

Finally, the Court should authorize redaction of several disclosures of information in the search warrant materials that are unrelated to the merits of potential charges and instead constitute potential impeachment evidence against specific federal agents. Applicants state in the Motion that they are seeking to unseal the search warrant materials to "learn critical details necessary to properly assess the culpability of the public officials implicated in the scandal," (see Motion at 6), and to fill in "gaps in information" in the Special Master's report.  (See id. at 7.)  But the potential impeachment related-disclosures in question relate to statements and/or conduct of federal agents and cannot credibly be described as "critical details," particularly because they are not the public officials implicated in the federal investigation.  The potential impeachment-related disclosures should thus be redacted, too.

### I.    The Redactions Proposed by the Government Comport with the FRE 502(d) Orders

The FRE 502(d) Orders explicitly authorize the government to "reference[] [materials and information subject to the orders] in search warrant affidavit[s] and other sealed criminal process," see CR Misc. No. 19-292-PA at ¶ 4, which is what the government did.  Because Applicants' Motion seeks to unseal the search warrant materials under the qualified common law right of access, the government maintains that it has not violated the FRE 502(d) Orders in any way, nor will not violate the FRE

502(d) Orders if the Court orders that the search warrant materials be unsealed, with or without the redactions proposed by the government.

Out of an abundance of caution, the government shall promptly inform the City of Applicants' Motion, which is set for a hearing on April 12, 2024, and provide it with copies of the Motion and this response so the City can decide whether to intervene in this matter to assert any privileges it believes apply.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court authorize the various redactions to the search warrant materials proposed by the government.